Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open and calling to law. God said the United States in this honorable court. Good morning. This is Judge Wilson in Tampa, Judge Pryor is in Atlanta, and Judge Lagoa is in Miami. We have four appeals that are scheduled for oral argument this morning. The court appreciates your cooperation, counsel, in scheduling these arguments to be heard by telephone conferencing this morning. Before we begin, I will advise counsel preliminarily that we have read the briefs and we've considered relevant parts of the record. That will assist you in confining your arguments to the issues on appeal. Ms. Geddes is the courtroom deputy, and she will serve as the timekeeper. And she will alert you when your time to argue has expired, and before that, when there are two minutes left to your allotted time. And so, we are ready to begin our first argument. It is the United States of America v. Miguel McSwain. Holly Lynn Gershaw is here for the United States, the appellant. And Conrad Benjamin Kahn is here for the athlete, McSwain. And Ms. Gershaw, are you ready to begin with your argument? Yes, your honor. You may. Good morning, your honors. Counsel, may it please the court. Holly Gershaw on behalf of the United States. In finding Harris inescapable here, the district court concluded that because the officers did not know who the driver of the Camry was until after the knock-and-talk violation, the officers did not have probable cause to arrest the driver before that violation. In doing so, the district court erred as a matter of law because probable cause does not require that the officers know who the person is. To the contrary, officers often arrest suspects who they see committing crimes and only find out their identity. Counsel, this is Judge Legault. May I stop you? You just made a statement that's very interesting to me. You obviously do not give a probable cause if you see a person committing a robbery and they come out of the store, even though you don't know who they are, you have probable cause to arrest them for the burglary, correct? Yes. Okay. In this case, what evidence do you have, because I read the record, as did all the other judges, is what evidence do you have that Miguel McClain was the individual who exited the vehicle and entered into Unit A? We do not have any evidence that he was the individual that exited the car and went into Unit A. What we do have is the evidence that the officers saw McClain driving the car, got a good look at him, were able to recognize him. The record also shows that when they saw the car and they got out to look and investigate if anybody was in the car still, Officer Ross at the time thought that the individual who was driving the car was Rajay Jackson, correct? In fact, he pulled up a picture and said 100% it's Jackson. So he actually didn't have any indication that it was Rajay Jackson before he pulled up the picture. When he pulled up the picture, which was an outdated picture in which Rajay Jackson had a different hairstyle similar to the hairstyle that McClain currently had, he thought that... ...that there is a person in that house that committed an offense. I don't think that they needed any probable cause that the person in the house committed the offense. What they had to have is probable cause to believe that the driver of the Camry committed a crime. And at that point they had probable cause to arrest the driver of the Camry. And the only benefit that the officers got from their Fourth Amendment violation was the opportunity to take into custody the person that they saw commit the crime, the driver of the Camry, which is the same advantage that the officers got in Harris as a result of their Fourth Amendment violation. But in Harris, let's talk about Harris. Harris is an interesting case. In Harris, when they show up to the house, they actually know that Harris was wanted for murder. They're actually looking for the individual Harris, correct? Correct. They know that Harris is the person that they're looking for. Correct. And here, the news does not know that McClain is the person they're looking for. In fact, they don't have any idea who the person they're looking for. In fact, they don't have any evidence from anyone, even a neighbor who says, yeah, a person ran out of that car and ran into that house. The evidence is that they are looking for the driver of the Camry who they saw commit the crime and McClain's identity. But they have no idea. They have no idea where that driver went, correct? They don't have any evidence where that driver went. That's correct. But if they had seen the driver of the Camry a week later walking down the street. Let me ask you this question because the record is silent to this and it's unclear to me. At some point in the record, there's a statement that the Camry was stolen. But then a neighbor says, and this is why they think it's Jackson. A neighbor says that Camry belongs to the owner of that car in unit A and it's Jackson. So was the Camry stolen? The Camry was stolen. According to the record, they ran the place and it came back stolen. But the record does also show that the neighbor says that it was Jackson. Well, I guess we don't know when the car was stolen. So the stolen car could have been outside of unit A for a period of time. But the record is, that's just speculation based on the record. What we know from the record is that when the officers encountered the Camry on the scene before the knock and talk violation, they ran the place and the place came back as being reported stolen. Is there any evidence in the record other than what the officer said? Is there like a record that shows that there was a report that the Camry was stolen? Well, they called dispatch and dispatch said that the car was stolen based on running the place. But you can see that the record also does show that a neighbor told one of the officers, account number three was Roger Birch, that the owner of that car was in unit A. They said the car belonged to unit A in the sense that they have seen the car. I interpret that as they've seen the car in front of unit A, but I don't think that that means that Rodney Jackson was necessarily the owner of the car. But putting that aside, even without the probable cause to believe that the car was stolen, the officers had still seen the driver of the Camry flee from them after they turned on their lights, so they had probable cause to arrest him for fleeing to a lood. May I ask you a question regarding the DNA, the swab? Yes. Even assuming, let's assume that we found probable cause, under what theory would the swab be appropriate or admissible? There are two lines of cases that support the DNA evidence being admissible. The first is Maryland v. King, and in that case... Okay, but how, let's talk about the statute because we're dealing with Florida law, correct? We're dealing with Florida law, but the reasonableness of the search under the Fourth Amendment is a matter of federal law. So the question is, under the totality of the circumstances, was what the officers did here in collecting his DNA and comparing it to the DNA on the firearm reasonable under the Fourth Amendment? But it was done without a warrant, and it was done without his consent. In fact, they did it based on the statute in question, which is 943.325, Florida statute. That is correct. But of course, the motive of the officers and their subjective belief is irrelevant to the Fourth Amendment analysis. I understand it's irrelevant, but under the statute, as in Maryland v. King, in that case, they took the swab for purposes of identification for which part of the booking process. And under the Florida statute, if a person in this case is arrested and brought in for a felony, you shall, it's mandatory, you take a swab, a DNA sample of the arrested individual, the qualified offender. And that, under the statute, is only to be used for law enforcement identification purposes, which means that you put it into the database and you could run it under CODIS. And then if it hits and was a match, then you either can get your probable cause to arrest the person for that, or then you can get another warrant, a search, another warrant to take another swab, which is, in fact, what they did in Maryland v. King. Is that correct? It is correct. But in Maryland v. King, they ran the... You have a two-minute warning. They ran the DNA through CODIS to discover that the defendant had committed an additional crime or rape. And here, our argument is that running his DNA and comparing it to the firearm to identify him as the possessor of the firearm is relevant to the booking process because in booking an arrestee who already has a diminished expectation of privacy, coupled with the fact that he was a probationer who is not allowed to possess a firearm, that was information that was relevant to the booking procedure. You could have also ran the DNA on the gun. Then you could have asked for a warrant to get a DNA sample to get Mr. McSwain's DNA in order to test it and compare it based on that. Or, frankly, my understanding of the record is that McSwain admits that he already had a DNA sample in the record, in the database, as a result of having to give it to his probation officer. So, in fact, you could have run it, but you didn't do that. We could have, and we also could have run the DNA from the firearm through CODIS and it would have matched with McSwain, which all goes to show why, in light of the circumstances, this is a de minimis search against someone... The government doesn't get to do a constitutional violation just because if you had done it correctly, it wouldn't have been a constitutional violation. I understand that, and that was not what I was trying to imply. What I was trying to argue is that, under the totality of the circumstances, when you look at if this was a reasonable search, it was a reasonable search, given McSwain's diminished expectation of privacy in his DNA, in his person, as a result of him being an arrestee and a probation officer. Does the order of probation say that he is subject to DNA samples at random times? It does not, but it does say that he is prohibited from owning a firearm and that he is... I understand it says that, but it doesn't say, in another case, the individual who had the DNA sample was subject to having DNA taken at random times. That's not the case. May I answer that question? You may. In Jankovic, there was also not a search provision for the defendant's computer, but in light of the totality of the circumstances and his diminished expectation of privacy and the fact that he was not supposed to use the Internet, the officers were allowed to conduct a warrantless search of his computer. So the fact that there is not a search provision in his probation is not just positive here. All right. Thank you, Ms. Gershaw. Thank you. And you've reserved some time for rebuttal. We will now hear from Mr. Kahn on behalf of the appellee, McSwain. Good morning, and may it please the Court. Conrad Kahn on behalf of the appellee, Miguel McSwain. I'd like to begin with the Harris issue and kind of discuss some of the points that Judge Lagoa and my opposing counsel were discussing. There's two main points I'd like to discuss. First is that the officers lack particularized suspicion to believe Mr. McSwain was the driver of the car before the Fourth Amendment violation. And second, the officer's testimony that he could identify the driver if he saw him later is insufficient to establish probable cause. Starting with the first point, before the Fourth Amendment violation, the only information the officers knew about the identity of the driver was based on seeing the car drive by quickly. Importantly, the body cam footage that was played at the suppression hearing shows that when the officers arrived at Unit A, they were looking for a black man with short hair who was maybe wearing a T-shirt. That type of generalized description describes hundreds, if not thousands, of men. In fact, Officer Ross was 100% certain Rajay was the driver based on seeing an old picture of Rajay when Rajay had short hair. This gentleman... Counsel, may I ask you something? Go ahead, Judge Lagoa. My question is, would you concede that when Officer Ross or Officer Burge show up and they ask the neighbor, did you see anybody? And if an individual said, I saw a person run out of that car into that unit, would they then have probable cause? They would not have probable cause as to McSwain yet. They need to identify McSwain. And as Judge Steele said, it was only when they saw McSwain the second time they were able to identify them. The government suggests they have probable cause based on that initial good look. But seeing and identifying an individual resembling the suspect was, here, critical to developing particular override suspicion. My question is, would they have... Would you believe that they would need a warrant then to go into the house? Yes. I believe they would need a warrant to go into the house because they still do not have... to believe that the driver is in there, that the driver is in the building. But if... So is it your position that at any and all times, if you see a person committing a bank robbery, you know that they come out of the bank, they have the bags, they jump in the car, there's a car chase, you lose them. But then you see them jumping and they get into a building and run into a building. Even though you don't know who that person is, is it your belief that you do not have probable cause to arrest them? You may have probable cause, but if they're in their home, I think also you cannot enter the home to effectuate an arrest absent exigent circumstances without an arrest warrant. But if they saw the driver run in, they would have probable cause at that point based on the... based on seeing the individual run into the building or into their home. So turning back... But here, obviously, that didn't happen. Here, they only saw the driver drive by quickly. And when they got to the unit, we know from the body cam footage, they said, we saw a black man with short hair. He might have been wearing a T-shirt. We're not sure. That type of generalized description does not rise to the level of particularized suspicion required under the Fourth Amendment. In fact, it describes hundreds of individuals in the government... Mr. Cohn, this is Jill Cryer. How is this case different from the Roberson case that the government cites? Roberson case... I'm sorry, Your Honor. The Roberson case is materially different because in Roberson, there was a prolonged view of the suspect, I believe, if I'm remembering the case accurately. Here, the officers only saw the suspect quickly as he drove by. And we know from the body cam footage that they only gleaned generalized information that describes hundreds of individuals. It's the information that... But, Mr. Cohn, they say that they could recognize... The officers said that they could recognize the driver if they saw him. So isn't that just like Roberson, where they observed the suspect in the car and then followed him to the home? I think it's different, Your Honor, because, like I said, they viewed the driver here very quickly before the Fourth Amendment violation. And merely saying that you could recognize the driver if you saw him again later, that's insufficient to establish probable cause. The only statement Officer Birch made here was that if he saw the driver again, he could recognize him. But that type of I-know-it-when-I-see-it statement can't establish particularized probable cause. Indeed, had the officers went to a magistrate judge and asked for a warrant, and in their application said they saw a black man with short hair fleeing and they'd know him if they saw him again later, no magistrate judge would have issued a warrant based on such a generalized description. So even if we could consider that type of testimony under the Harris framework, it's insufficient to establish probable cause. So, in sum, the two points I'd really like to emphasize here is, one, they lack particularized suspicion before the Fourth Amendment violation, which is evidenced by the description on the body cam footage when they arrive at Unit A. And two, that testimony that they could recognize him if they see him later, assuming we can even consider it, it's wholly insufficient to establish particularized probable cause. I'd like to quickly turn to the DNA issue. Obviously, if the court agrees with the district court that Harris does not apply here, it does not need to address the DNA buckle swab. Well, let's assume that there was probable cause, so, under this scenario. Okay, so then we would turn to the DNA buckle swab argument. With all due respect to my friend on the other side, I think the government reads too much into the King opinion. I think King is materially different. In King, they discussed the challenge to Maryland's DNA Collection Act under the Fourth Amendment, and they balanced the officers' need or legitimate interest in identification against the privacy interests of an RSD, including the bodily intrusion of taking the swab and the information obtained from the DNA swab. Regarding the information, though, they said the privacy interests were diminished because the statute itself limited the ways that information could be used. Here, the balance on both sides of the scale is materially different. The interest in the officers here was not just identification. It was to pursue an ongoing criminal investigation. And on the privacy side, they went outside the statutory safeguards by the Florida DNA Collection Act and used the information for a purpose that's not allowed, and that is to conduct an ongoing criminal investigation. Let me ask you a question regarding that. My reading of the record, and you can correct me if I'm wrong, is that Mr. McSwain admitted that he did have a DNA sample already in the Florida database based on a collection that he gave to the probation officer. Is that correct? Your Honor, I apologize. I don't recall specifically if he admitted it. I know the government alleged it, but there was never any statement or allegation by the government that they had it accessible, that it was retrievable, that it was on file, that they could use it. That's my question. You don't recall your client in any paper saying specifically that that collection was done? I apologize, Your Honor. I don't recall the specific admission, but I do recall the government arguing that below. But nevertheless, even if they had it accessible, that only furthers the point that the officer could have easily used Mr. McSwain's DNA here to compare to the gun if they simply got his consent or a warrant. But here, they took his DNA as part of an ongoing criminal investigation, and the consequence of the government's argument, and this is the last point I really want to leave the court with, is that what the government's really asking for here is a new exception to the Fourth Amendment's warrant requirement, that any time an individual is arrested, the officers can take a DNA buffer swab to use as part of an ongoing criminal investigation without a warrant or consent or any exception to the warrant requirement. Can I ask you one final question before you finish? Of course. If there is a – would you – what's your position on if the government ran now the CODIS, the DNA found in the gun, and they ran it through CODIS, and there was a hit on your client that's not based on the DNA sample that was taken at this time, would that be something that would be not suppressible? I think that's a closer question, Your Honor, but they took it – if they put his DNA in CODIS this late stage in the proceedings, I would suggest that they weren't really doing it to identify the arrestee who's now been in custody for several months. So that would be my first thought, Your Honor, but I think that would be a closer question. Okay. Thank you. The court has no further questions. We would respectfully suggest that the district court got it right below when they said Harris does not apply, and we have asked the court to affirm the district court suppression order. Thank you. Thank you, Mr. Kahn. And Ms. Gershaw, you've reserved some time for rebuttal. Yes, Your Honor. I think – my understanding is that there is no dispute between us that if the officers have probable cause to arrest McSwain prior to the knock-and-talk violation, then these post-arrest statements and Google swaps should not be excluded on that ground. So I'd like to discuss the factual evidence from the record that shows that they did have probable cause. Now, initially, probable cause is not a high bar. It requires only a fair probability on which a reasonable, prudent person would act. Before McSwain emerged from hiding in Unit A, the officers said that they could identify the driver of the Camry if they saw him because they had gotten a good look at him, they just did not know who he was. Consistent with that, and at the evidentiary hearing, the officers testified that they had a clear and unobstructed view of the Camry's driver. They both then identified McSwain as the driver based on having seen him. They also testified that they had immediately recognized McSwain as the driver of the Camry. This is Judge Wilson. The district court made a determination that the officers did not know who the driver of this car was until McSwain exited the apartment. All along, they thought that Jackson had been the driver of the automobile. Is that a finding of fact that you can say is clearly erroneous? Well, that is a finding of fact that I would say. First of all, Officer Birch never said that he thought it was Rodney Jackson, and the district court acknowledged that. But also, you have the magistrate judge's factual findings based on a credibility determination, which the district court accepted that the officers said that they recognized McSwain as the driver of the Camry. I thought Zachary Ross said he was 100% certain that Jackson was the driver and not McSwain. Well, he didn't say and not McSwain. He was 100% certain based on the picture that he saw. But he also testified that when he saw McSwain and Rodney Jackson together, that he immediately recognized that Rodney was not the driver of the car and that McSwain was because of the hair. All right, but let me address what the district court. Let me just ask to let you know what my concern is because we're reviewing the denial of the motion to suppress De Novo, but it's a mixed question of law and fact. A district court's ruling on a motion to suppress presents us with a mixed question of law and fact, and I'm trying to figure out which findings of fact the district court relied upon in order to make its probable cause determination. What findings of fact are clearly erroneous? Well, I don't think that his findings of fact are clearly erroneous because I don't think that what he said is when the officers saw McSwain driving the car, they didn't recognize him as McSwain, which we don't dispute. But the question is when they saw McSwain, were they able to recognize him again based on having seen him as the driver of the Camry? And the district court never made that factual finding, and we know that because the district court left open the possibility that during trial, based on them having seen McSwain as the driver of the car, but didn't the district court judge find that they only were able to identify McSwain as a result of the Fourth Amendment violation of the knock and talk? It did not, because if he had made that determination, he would have also suppressed the in-court identification because the analysis in Cruz for that is the same analysis as in Harris, and the Harris court relies on Cruz and says it's analogous, which is can the officers recognize the person absent the change of the Fourth Amendment violation? So that is still an open question. So at the very least, we know that the district court made a legal error in his probable cause determination because he said you have to know who the person is, their name, before you have probable cause to arrest them, which we know isn't true. So at the very least, this case should go back to the district court. The district court makes the factual finding of could the officers have identified McSwain absent the Fourth Amendment change, in which case the evidence should not be excluded. We may ask you another question regarding Roberson, which the government relies on. In Roberson, the detective testified that Wagner saw Roberson and the driver of the vehicle run up to the porch, look around, and run into the house, and that's how they knew that the person was in the house that they were looking for. So is that not distinguishable, then, from this case? Well, and that's what the court in Roberson said. You have to subtract that. May I finish? You have to subtract the fact that they knew he was in the house from the analysis and say absent his location in the home, is there still enough probable cause for the officers to have arrested him? Put aside the fact that they saw him running into the house. Was there still probable cause? And they said, yes, there was, because they had gotten face-to-face look at him. Now, my opposing counsel says, well, that's different. They got a longer look. But that's a factual finding. And, again, at the very least, it should go back to the district court and have the district court make the factual finding of, absent the cane of the Fourth Amendment violation, could the officers have identified McSwain if they saw him again? And so we would ask that this court reverse and remand to the district court. Thank you, Ms. Gershaw, and thank you, Mr. Kahn. And that concludes this argument. Thank you.